IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD CHERRY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES T. WYNDER, JR., et al. | : | NO. 05-2560 |

MEMORANDUM

**Padova, J.**                                                              **March 26, 2007**

Currently pending before the court is Petitioner Gerald Cherry's pro se Petition for Writ of

Habeas Corpus (Doc. No. 1) filed pursuant to 28 U.S.C. § 2254 and Petitioner's "Motion to Clarify

the Facts of the Records" (Doc. No. 32).  After reviewing the Report and Recommendation of United

States Magistrate Judge David R. Strawbridge, and following a de novo review of those portions of

the Report and Recommendation to which the Petitioner has filed objections, the Petition is denied

and the Magistrate Judge's Report and Recommendation is adopted with the few modifications

discussed below.  Petitioner's "Motion to Clarify the Facts of the Records" is granted in part and

denied in part.

## I.      PROCEDURAL BACKGROUND

On March 19, 1999, following a two-day jury trial in the Philadelphia Court of Common

Pleas, Cherry was convicted of three counts of robbery and aggravated assault, possession of an

instrument of crime, and criminal conspiracy.  He was sentenced on April 28, 1999 to an aggregate

term of imprisonment of 12½ to 25 years.  His conviction was affirmed on appeal by the

Pennsylvania Superior Court on August 24, 2000. See Commonwealth v. Cherry, 764 A.2d 1120 (Pa.

Super. Ct. 2000) ("Cherry I").  On January 9, 2001, the Pennsylvania Supreme Court denied his

petition for allocatur.  He did not seek review in the United States Supreme Court.

On December 13, 2001, he sought relief, <u>pro se</u>, under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541-46 ("PCRA"). Counsel was appointed and filed an amended petition on June 27, 2002, and a second amended petition on November 19, 2002. The PCRA court dismissed the petition on March 27, 2003 without holding an evidentiary hearing. Cherry appealed the decision to the Pennsylvania Superior Court, which affirmed the PCRA court on June 10, 2004. <u>See</u> <u>Commonwealth v. Cherry</u>, 858 A.2d 1272 (Pa. Super. Ct. 2004) ("<u>Cherry II</u>"). The Pennsylvania Supreme Court denied Cherry's petition for allocatur on March 15, 2005. (Pet., Doc. No. 4 at 5-6; Resp., Doc. No. 14 at 2-3.)

Cherry initiated the present action on May 25, 2005. (Doc. No. 1 at 11.) The Philadelphia District Attorney's Office filed its response on November 8, 2005. (Doc. No. 14.) The Magistrate Judge denied Cherry's requests for the appointment of counsel and for discovery. (Doc. Nos. 20 & 30.) Petitioner filed numerous motions to "clarify" the record both prior to and following the filing of Respondent's answer to his petition. (Doc. Nos. 8, 18, 21, 23, 24, 25, & 28.) The Magistrate Judge granted these motions. (Doc. Nos. 20, 26 & 30.) Following the Magistrate Judge's filing of his Report and Recommendation, Cherry filed another "Motion to Clarify the Facts of the Records." (Doc. No. 32.)

## II.   FACTUAL BACKGROUND

On September 8, 1998 around 9:00 p.m., three men approached Richard Wragg, Melvin Hairston, and Eric McLaurin as they walked in the area of Market and Conestoga Streets in Philadelphia. One of the assailants, wearing an orange t-shirt, jeans, and a Phillies cap, brandished a 9-mm handgun as he approached the group, pointed it at Wragg's ribs, and announced a "stick-up." The second assailant, dressed in all black, held a gun to the back of Hairston's neck. The first

2

gunman told the three victims to empty their pockets.  As Hairston did so, the second gunman knocked him to the ground by hitting him in the head with the gun.  The third assailant, a light-skinned man wearing a blue jacket, braids in his hair, and a hat, retrieved the money Hairston dropped and a pager Wragg had been carrying.  The three assailants then fled on Conestoga Street. (N.T. 3/18/99 at 59-70 (Hairston), 93-106 (Wragg), 136-43 (McLaurin).)  Wragg and McLaurin observed the first gunman turn back in their direction and, from a distance of approximately 15 to 25 feet, fire a gunshot at them.  (N.T. 3/18/99 at 107-08 (Wragg), 143-45 (McLaurin).  See also N.T. 3/18/99 at 70-71 (Hairston).)  The police later recovered a spent 9-mm cartridge about 25 to 30 feet from the scene of the robbery.  (N.T. 3/18/99 at 175-76 (Chitwood).)

The police received a call regarding the incident from Jimmy Johnson, who observed the encounter from the front steps of the store he owned at the corner of Market and Conestoga Streets. Johnson informed the police that he recognized the assailant who had fired the shot as someone from the area.  Johnson told the police that the man was known to him as "Bashir" or "Shabazz" and that he had known him for several years.  Johnson provided personal information about this man to police and told them that he lived in the area of 54th and Chestnut Streets. (N.T. 3/18/99 at 164-65 (Chitwood).)

Police officers proceeded to 5448 Chestnut Street based on the information provided by Johnson.  Bystanders on the street further informed the officers present that "Bashir" was upstairs at 5448 Chestnut Street.  As some officers entered that location to go to the second floor apartment, another officer on the street observed a man wearing a grey sweatshirt emerge from the second floor porch, climb over a ledge, and enter the adjacent rowhome at 5446 Chestnut Street.  The police apprehended the man — Cherry — inside 5446 Chestnut Street.  Johnson was brought to the scene

and identified Cherry as "Bashir," the man who committed the robbery, from among four or five other men.  The officers handcuffed Cherry and put him in the back of a patrol car. (N.T. 3/18/99 at 165-67, 172-73 (Chitwood), 194-96 (Liciardello).)

Meanwhile, following the robbery and shooting, the victims ran to Wragg's house and called the police.  The police interviewed Wragg, Hairston, and McLaurin and then brought them to 5448 Chestnut Street.  The police shone a light on the area where Cherry, having been taken out of the patrol car, stood handcuffed between two officers.  One of the detectives then asked whether they could identify the man.  Each of them identified Cherry as the robber who had worn the orange shirt and who had pulled the gun on Wragg. (N.T. 3/18/99 at 72-75, 85-92 (Hairston), 109-10, 126-29 (Wragg), 146-49 (McLaurin), 170-71 (Chitwood).)

At trial, all three victims, as well as Johnson, identified Cherry as the perpetrator who had been wearing the orange shirt during the robbery.  In addition, the jury was told that a search of business records using the social security number and date of birth provided by the defendant revealed that his correct name was Gerald Cherry and not Anthony Johnson, the name he gave officers at the time of his arrest. (N.T. 3/18/99 at 226.)

## III.   LEGAL STANDARD

Where a habeas petition has been referred to a magistrate judge for a Report and Recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made . . . [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b).

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

4

judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C.A. § 2254(d). The "contrary to" and "unreasonable application" clauses have independent meaning. Williams v. Taylor, 529 U.S. 362, 404-05 (2000). A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Id. at 405-06. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. Id. at 407-08. The focus of the "unreasonable application" inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and the Supreme Court has stressed that an unreasonable application is different from an incorrect one. Id. at 409-10.

## IV.   DISCUSSION

Cherry's petition for habeas corpus is somewhat disorganized, nevertheless, the Magistrate Judge identified, and our review confirms, that the following issues were raised by Cherry in his habeas petition: the propriety of Cherry's detention pending victim identifications; the propriety of the identifications; the propriety of the weapons charge; the propriety of multiple charges of aggravated assault; alleged prosecutorial misconduct and trial court error regarding the other name Cherry had given to the police; the propriety of his sentence; and ineffective assistance of counsel.

Each claim is discussed below.

      A.     Propriety of Detention Pending Victim Identifications

Cherry alleges in his petition that his conviction was "obtained by use of evidence obtained pursuant to an unlawful arrest" and explains, inter alia, that "Petitioner was detained by police, for an hour to forty-five minutes[]."  The Magistrate Judge interpreted Cherry's petition to include the following contentions: that he should have been afforded counsel and brought to the nearby police station for a formal line-up as opposed to the show-up procedure outside his home, particularly because of the 45-60 minutes he allegedly was held in the patrol car while waiting the arrival of the complainants; and that the police did not have sufficient probable cause to detain him pending the identifications by the victims based solely on Johnson's uncorroborated information.  The Magistrate Judge reported that this claim is procedurally defaulted because it was not raised previously by Cherry in either his direct appeal or PCRA review.  The Magistrate Judge also found that there was no basis in the record to excuse Cherry's default.  Specifically, the Magistrate Judge noted that there was nothing in the record to suggest that default of this claim was attributable to any attorney error.  The Magistrate Judge also found that Cherry had not met his burden to show actual innocence in order to meet the requirements of the fundamental miscarriage of justice exception to a procedurally defaulted claim.  Consequently, the Magistrate Judge did not reach the merits of this claim.

In response to the Magistrate Judge's recommendation that this claim is procedurally defaulted, Cherry appears to contend that he is entitled to an evidentiary hearing on this issue because there are facts in dispute and he did not receive a full and fair hearing in the state court, either at the time of trial or in a collateral proceeding.  (Pet.'s Objs. at 18-19.)  Cherry cites Townsend v. Said, 372 U.S. 293 (1963), which held that "[w]here the facts are in dispute, the federal

court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding." Id. at 312.  Cherry states, "[t]here cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant." (Pet.'s Objs. at 19.)

Cherry's objection is without merit.  A review of the issues raised by Cherry in his direct appeal and PCRA petition indicates that he failed to raise previously this claim of being improperly detained without probable cause.  The state court did not have a full and fair evidentiary hearing on this issue to resolve any factual dispute that Cherry now claims exists because he failed to raise the issue to the state court.  As a result, this claim is procedurally defaulted, and Cherry is not entitled now to an evidentiary hearing as a result of his procedural default.  Cherry presents no argument to excuse his default.  Consequently we adopt the Magistrate Judge's recommendation that this claim has been procedurally defaulted.[1]

In his discussion of this claim in his Objections and in his Memorandum of Law in Support of Writ of Habeas Corpus, Cherry briefly asserts that he was not read his Miranda rights by either of the arresting officers.  (Pet.'s Objs. at 18, and Pet.'s Mem. of Law at 35.)  The Magistrate Judge did not address this claim.  A review of the record indicates that Cherry did not raise this claim in his direct appeal or his PCRA review.  As the time period has passed in which Cherry could have

---

[1]We further note that 28 U.S.C. § 2254(e)(2) provides that a court shall not hold an evidentiary hearing on a claim if a petitioner has failed to develop the factual basis of a claim in State court proceedings unless the claim relies on either a new rule of constitutional law or a factual predicate that could not have been previously discovered through the exercise of due diligence, and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense. Cherry has failed to meet these requirements for an evidentiary hearing.

pursued this action in state court, this claim is procedurally defaulted.  Cherry has not asserted any cause for this default.  Consequently, we find that this claim has also been procedurally defaulted.

     B.     Propriety of Identifications

Cherry takes issue with the identifications by both Johnson, a witness to the incident, and Wragg, Hairston, and McLaurin, the three robbery victims.

     1.     <u>Identification of Johnson</u>

Cherry contests the "legality" of the on-site identification by Johnson.  The Magistrate Judge reported that this claim had not been fairly presented to the Pennsylvania Superior Court on direct appeal or on PCRA review, and was therefore procedurally defaulted.  The Magistrate Judge noted that Cherry did raise concerns about Johnson in his brief to the Superior Court on direct appeal, but that his concerns had to do with the consistency of Johnson's in-court testimony, his ability to have perceived and recalled key events, and his alleged bias against Cherry.  The Magistrate Judge further noted that Cherry has not presented any basis for excusing his procedural default of this issue.  Cherry did not file any Objections that can be broadly considered to relate to the Magistrate Judge's recommendation that this claim has been procedurally defaulted.  Therefore, we adopt the Magistrate Judge's recommendation with respect to this claim.

     2.     <u>Identification by Victims</u>

The Magistrate Judge interpreted Cherry's claims with respect to the identification by the three victims to be as follows:  the identifications by the victims constituted an overly-suggestive and illegal "show-up" that tainted the later in-court identifications.  The Magistrate Judge reports that Cherry raised this issue in a timely manner and exhausted this issue by presenting it to the Superior Court on PCRA review.  The Magistrate Judge, therefore, reviewed this claim on its merits, but

recommended that Cherry should not be granted habeas relief for this claim because the state court's determination of this issue was not contrary to, or an unreasonable application of, Federal law as determined by the Supreme Court.

We adopt the reasoning of the Magistrate Judge regarding the admissibility of the identification by the three victims notwithstanding the suggestiveness of the show-up procedure. However, we believe that is it not necessary to reach the merits of this issue because this claim has been procedurally defaulted and there is no cause to excuse Cherry's default.  The Superior Court in Cherry II found that this claim had not been presented on direct appeal or in Cherry's PCRA petition.  Cherry II, at 7, 12.  The Superior Court, accordingly, only examined whether Cherry's direct appeal counsel and his PCRA counsel were ineffective for failing to raise this claim.  Id. Consequently, any claim brought by Cherry in his federal habeas petition asserting that the show-up was unduly suggestive has been procedurally defaulted because he failed to raise this underlying issue in his direct appeal.  The United States Supreme Court has held that ineffective assistance of counsel can constitute cause for a procedural default.  Murray v. Carrier, 477 U.S. 478, 488 (1986). However, the Court also held that the exhaustion doctrine, generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  Id. at 489.  Cherry does assert that his counsel was ineffective for failing to raise this issue, and this claim of ineffectiveness was presented to the state court as an independent claim.  Therefore, Cherry may properly argue that ineffective assistance of counsel based on his attorney's failure to raise this issue is cause for his procedural default.

To establish ineffective assistance of counsel for failing to raise this issue Cherry must show that his attorney's representation fell below an objective standard of reasonableness; and that there

9

exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688-96 (1984). As this specific claim was adjudicated on the merits in the state court, our review is limited to determining whether the state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

The Superior Court in Cherry II noted that in proving a claim of ineffective assistance of counsel, Cherry must demonstrate that (1) the underlying claim is of arguable merit, (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest, and (3) that he was prejudiced by counsel's ineffectiveness. Cherry II, at 5-6. This standard applied by the Superior Court has been held to be equivalent to the Strickland standard. See Rompilla v. Horn, 355 F.3d 233, 248 (2004) (rev'd on other grounds). Consequently, our review of the Superior Court's decision is limited to determining whether that court applied the standard unreasonably given the facts of this case.

The Superior Court found Cherry's claim for ineffective assistance of counsel for failing to preserve the issue of whether the show-up was unduly prejudicial to be without merit. The Superior Court first identified verbatim the five factors articulated by the Supreme Court in Neil v. Biggers, 409 U.S. 188 (1972), that are used to determine if an identification was impermissibly suggestive. These factors are:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the

confrontation; and (5) the length of time between the crime and the confrontation.

Cherry II, at 8-9.  The Superior Court determined that based on the totality of the circumstances, the trial court committed no error in allowing the admission of the victim identifications.  Id. at 12.  The Superior Court relied on (1) the fact that the suppression court found to be credible the police officers' testimony that they said nothing to the victims that specifically implicated Cherry and did not suggest to the victims that they should identify Cherry as the perpetrator of the robbery and assault, and (2) the fact that Cherry's identity was independently verified by Johnson who testified that the area outside his store was well-lit and that the victims had ample opportunity to view Cherry's face for several minutes during the robbery.  The Superior Court concluded that because there was no merit to the underlying claim that the show-up was unduly prejudicial, Cherry's claim that his counsel was ineffective for failing to preserve this issue was without merit.  We find that the Superior Court did not unreasonably apply the Strickland standard in evaluating Cherry's claim for ineffective assistance of counsel for failing to preserve his objection to the show-up procedures.  Consequently, as Cherry does not have a valid ineffective assistance of counsel claim for failing to preserve the issue of whether the show-up was unduly suggestive, he has not demonstrated cause for failing to preserve this underlying claim and it is, therefore, procedurally defaulted.  We find no other basis in the record to excuse Cherry's procedural default of this claim.

C.      Propriety of the Weapons Charge

Cherry's fourth ground in his petition asserts that he "was charged with a weapon's charge without[] probable cause."  The Magistrate Judge understood that Cherry was arguing that his sentence was improper given that "the so called weapons that were recovered were never actually found in Petitioner's presen[ce], and contained no finger prints to link them to Petitioner as using

11

them.  Petitioner was never tested for any gun shot residue by the lead arresting officer." (Pet.'s

Mem. of Law at 48.)   On direct appeal, Cherry sought to challenge his convictions based on the

argument that the evidence was insufficient.  Cherry's brief noted that the Commonwealth did not

perform a gun residue test.   The Superior Court deemed that Cherry's claim that there was

insufficient evidence was waived because his Statement of Matters Complained of on Appeal did

present this issue.  Cherry I, at 3.  The Magistrate Judge found that Cherry's failure to comply with

this state procedural rule was an independent and adequate state ground for the Superior Court's

denial of review of this claim.   The Magistrate Judge, therefore, concluded that this claim is

unexhausted and procedurally defaulted.   See Buck v. Colleran, Civ. A. No. 04-1189, 115 Fed.

Appx. 526 (3d Cir. Sept. 27, 2004) (finding claim procedurally defaulted and cause not established

where Superior Court deemed issue waived because not included in statement of matters complained

of on appeal).  The Magistrate Judge also found no basis to excuse Cherry's default of this claim as

he was represented by counsel when the Statement of Matters Complained of on Appeal was filed,

and, although Cherry does assert elsewhere a claim of ineffective assistance of counsel by his

appellate counsel, he does not base this claim of ineffectiveness on appellate counsel's failure to

include this issue in the Statement of Matters Complained of on Appeal.

Cherry did not file any Objections that can be broadly considered to relate to the Magistrate

Judge's recommendation that this claim has been procedurally defaulted.  Therefore, we adopt the

Magistrate Judge's recommendation with respect to this claim.

D.     Propriety of Multiple Charges of Aggravated Assault

Cherry argues that his sentence was excessive and asserts that he "was charged with three

counts of aggravated assault on one person."  Cherry contends that, because the testimony indicates

12

that only one of the victims (Wraggs) testified that he saw the man in the orange shirt fire a shot at him, he should have been charged with only one aggravated assault.

The Magistrate Judge noted that Cherry contested on appeal the fact that he was charged with separate offenses and given separate sentences to run consecutively for what amounted to a single criminal act or transaction. However, the Magistrate Judge found that this claim on direct appeal did not challenge the propriety of three charges of (and convictions for) aggravated assault based on the argument that only one of the three victims testified that he was shot at. The Magistrate Judge also found that Cherry did not raise this issue on PCRA review. Thus, the Magistrate Judge concluded that Cherry has procedurally defaulted this claim and that there was no basis to excuse Cherry's default because he did not raise to the state court a claim that his direct appeal counsel was ineffective for failing to raise this issue.

Cherry's Objections to the Magistrate Judge's Report and Recommendation does not respond to the Magistrate Judge's recommendation on this claim, but rather merely repeats his assertion that there was insufficient evidence to conclude that there were three aggravated assaults. Therefore, we adopt the Magistrate Judge's recommendation to deny his petition with respect to this claim because this issue has been procedurally defaulted.

     E.     Alleged Prosecutorial Misconduct and Trial Court Error Regarding Other Name Given

The Magistrate Judge construes Cherry's petition to allege prosecutorial misconduct and trial court error. Cherry's claim appears to be based on the fact that, at trial, the prosecutor explored the issue of the name Cherry gave to police when they stopped him at 5446 Chestnut Street. Officer Kirkland, who investigated the incident, testified that Cherry originally said that his name was

Anthony Johnson.  Cherry also asserts that the trial court committed error for failing to give a curative instruction to the jury after the trial judge elicited testimony from Officer Kirkland that he had learned Cherry's true name from a search of "N.C.I.C."  Cherry asserts that a juror could have understood this testimony to mean that he had a prior criminal conviction.

The Magistrate Judge found that this issue was properly exhausted but that habeas relief was not warranted on this claim because there was nothing improper in the state court's determination that the handling of the testimony regarding Cherry's identity and his allegedly giving the police a false name resulted in prosecutorial misconduct or trial court error.  The Magistrate Judge agreed with the Superior Court that there was nothing inherently or unfairly prejudicial in the testimony that followed in response to questions about whether the name Cherry gave to police was his actual name.  There was also no reason for a juror to believe that a reference to "N.C.I.C." meant that Cherry had a criminal record.  The Magistrate Judge recommends that habeas relief is not warranted on this claim.  Cherry's Objections do not contest this portion of the Magistrate Judge's Report and Recommendation.  Therefore, we adopt the Magistrate Judge's recommendation that habeas relief is not warranted with respect to this claim.

F.      Propriety of Sentence

Cherry contends that his sentence was excessive and violated his due process rights.  He also contends that he "was sentenced outside the sentencing guidelines of Pennsylvania."  The Magistrate Judge found that this claim is procedurally defaulted, because, even though Cherry asserted on direct appeal that "the judge created an unnecessarily excessive and therefore unjust sentence upon him," he did not describe this claim as implicating his federal due process rights, nor did the legal authorities he cited involve claims of federal due process violations.  The Magistrate Judge also

14

noted this claim would be considered procedurally defaulted because, on direct appeal, the Superior Court found that Cherry had waived his challenge to discretionary aspects of his sentence because he failed to set forth a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f) and Commonwealth v. Tuladziecki, 522 A.2d 17 (Pa. 1987). The Magistrate Judge found no basis to excuse Petitioner's procedural default under the cause and prejudice or miscarriage of justice exceptions.

Cherry does not state any objections to this portion of the Report and Recommendation. Consequently, we adopt this portion of the Report and Recommendation and find that this claim has been procedurally defaulted.

G.     Ineffectiveness of Counsel

Cherry asserts that his preliminary hearing counsel, trial counsel, appeal counsel, and PCRA counsel were ineffective.  As discussed supra, in a claim for ineffective assistance of counsel, a petitioner must show: (1) that his attorney's representation fell well below an objective standard for reasonableness; and (2) that there exists a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 688-96.  This same standard has been incorporated by the Pennsylvania courts for challenges of ineffective assistance of counsel under the Pennsylvania constitution.  See Commonwealth v. Pierce, 527 A.2d 973, 976 (Pa. 1987) (stating that Pennsylvania courts apply elements of the Strickland test to ineffective assistance of counsel claims).  To satisfy the first prong of the test, a petitioner must show that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendants by the Sixth Amendment."  Strickland 466 U.S. at 687.  To satisfy the second prong of the Strickland test, a petitioner must show that there is a reasonable probability that, were it not for

15

counsel's errors, the outcome of the proceeding would have been different.  Id. at 694.

1.   Ineffective assistance of preliminary hearing counsel

The Magistrate Judge found that this claim is unexhausted because on direct appeal, Cherry contested only the assistance of "counsel at trial" and pointed to the failure of "trial defense counsel." Similarly, Cherry's brief to the Superior Court on PCRA review raised claims of ineffective assistance of counsel, but these claims related to trial counsel and Cherry's PCRA counsel.  The Magistrate Judge also found that Cherry had not established cause for his default.  Ineffective assistance of counsel can constitute cause for a procedural default, but generally, the claim of ineffective assistance of counsel must have been presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  Murray v. Carrier, 477 U.S. 478, 488-89 (1986).  Applying this principle to the facts in the present case, Cherry did contend on PCRA review that his direct appeal counsel was ineffective in failing to raise certain issues on appeal, however, he did not contend that his direct appeal counsel was ineffective for failing to challenge the performance of the preliminary hearing counsel.  Consequently, the Magistrate Judge recommended that we cannot deem any allegedly deficient performance by his direct appeal counsel to have constituted cause for the procedural default of the claim that his preliminary hearing counsel was ineffective.  The Magistrate Judge found no further basis to excuse Cherry's default, and also found that a fundamental miscarriage of justice would not result from failing to review this claim on the merits.

Cherry repeats his allegations concerning the alleged ineffectiveness of his preliminary trial counsel in his Objections to the Magistrate Judge's Report and Recommendation.  Cherry, however, does not respond to the Magistrate's recommendation that this claim has been defaulted and he does

not offer any further basis to excuse his procedural default of this claim.  We, therefore, adopt this portion of the Magistrate Judge's Report and Recommendation.

2.   Ineffective Assistance of trial counsel

Cherry asserts various grounds upon which he claims his trial counsel was ineffective.  The Magistrate Judge first looked to see what grounds for trial counsel's ineffectiveness were exhausted. The Magistrate Judge noted that Cherry, in his direct appeal, asserted that his trial counsel was ineffective for failing to produce existing exculpatory evidence and failing to become completely familiar with the case.  The Magistrate Judge found that only three of the grounds raised by Cherry asserting ineffectiveness of trial counsel were properly exhausted: (1) trial counsel's failure to cross-examine Johnson on the clothing he saw Cherry wearing earlier in the day; (2) her failure to call Johnson's wife as a witness to the event; and (3) trial counsel's failure to move for a mistrial when Officer Kirkland made reference to discovering Cherry's identify in the N.C.I.C. system.  The Magistrate Judge found that all other claims for trial counsel's ineffective assistance of counsel were procedurally defaulted and that there was no cause to excuse Cherry's procedural default of these claims.  Though ineffectiveness of his direct appeal counsel could be a basis for excusing Cherry's procedural default regarding his trial counsel's ineffectiveness, Cherry's did not raise the issue of his direct appellate counsel's ineffectiveness for failing to raise these particular issues, and so appellant counsel's ineffectiveness cannot serve as a valid basis for excusing Cherry's procedural default.

With respect to the various claims of trial counsel's ineffectiveness that the Magistrate Judge reported to be procedurally defaulted Cherry appears to assert in his Objections that, throughout his appeals, he has referred to various errors of trial counsel.  However, Cherry only cites to pages in his

17

Memorandum of Law in Support of Writ of Habeas Corpus to illustrate where he has raised these various other claims of trial counsel's ineffectiveness.  In order for Cherry to show that these claims are not procedurally defaulted, he must have raised them in a prior state court proceeding, not merely in his memorandum of law in support of his habeas petition.  A review of Cherry's direct appeal and PRCA review illustrates that these claims were not previously raised, and thus, regardless of whether Cherry raised them now in his Memorandum of Law, these claims are unexhausted and procedurally defaulted.  Cherry presents no objections to the Magistrate Judge's recommendation that there is cause to excuse his procedural default of these claims.  Consequently, we adopt this portion of the Magistrate Judge's Report and Recommendation.

With respect to the three claims for ineffectiveness of trial counsel not procedurally defaulted, the Magistrate Judge reported that the Superior Court held that the burden of proving counsel's ineffectiveness rested on Cherry, and that he had to prove: (1) that the underlying claim had arguable merit, (2) that counsel had no reasonable basis for the act or omission at issue, and (3) that the outcome of the proceedings would have been different but for counsel's act of omission. The Magistrate Judge noted that this standard has been held to be equivalent to the <u>Strickland</u> standard, and, therefore, reviewed the Superior Court's decisions only to determine whether that court applied the standard unreasonably, given the facts of this case.

a.      Failure to examine Johnson regarding clothing

The Magistrate Judge found that the Superior Court's conclusion that this claim does not present an instance of ineffective assistance of counsel is not an unreasonable application of the <u>Strickland</u> standard because Cherry has not demonstrated how this allegedly deficient conduct by his trial counsel prejudiced him.  The Magistrate Judge noted that trial counsel, instead of

18

questioning Johnson about the clothes Cherry was wearing earlier in the day, took the safer course of action, which was to argue in her closing that the prosecution's failure to question Johnson about the clothing he saw Cherry wearing earlier in the day suggests that Johnson would not have confirmed that Cherry was also wearing the orange shirt at that time.

Cherry presents no cognizable objections to this portion of the Magistrate Judge's Report and Recommendation.  Consequently, we adopt the Magistrate Judge's recommendation that this claim does not warrant habeas relief.

> b.      Failure to call Johnson's wife

The Magistrate Judge found that the Superior Court's conclusion that this claim does not present an instance of ineffective assistance of counsel is not an unreasonable application of the Strickland standard.  Cherry offered no evidence to support the contention that her testimony would have been inconsistent with the testimony of her husband or the victims.  Trial counsel again pursued the safer strategy of arguing in her closing that the prosecution's failure to call Mrs. Johnson was due perhaps to the fact that her testimony would not have supported the Commonwealth's case. Accordingly, the Magistrate Judge found that habeas relief on this claim is unwarranted.

Cherry presents no cognizable objections to this portion of the Magistrate Judge's Report and Recommendation.  Consequently, we adopt the Magistrate Judge's recommendation that this claim does not warrant habeas relief.

> c.      Failure to move for a mistrial

Cherry asserts that his trial counsel was ineffective for failing to move for a mistrial when Officer Kirkland mentioned the N.C.I.C. because this constituted evidence of prior crimes committed by Cherry.  The Magistrate Judge found that the Superior Court's rejection of this claim on the

merits does not constitute an unreasonable application of the <u>Strickland</u> standard.  The Superior Court determined that, based on a review of the record, the argument that counsel was ineffective for failing to preserve and pursue this issue was meritless.  The Superior Court noted that Cherry's contention that a jury would understand this testimony to indicate that he had a prior criminal record was speculative, and that such speculation was irrelevant since the parties stipulated that Cherry's true name was discovered in business records.  The Magistrate Judge found the Superior Court's reasoning to be sound given that Officer Kirkland's testimony did not amount to evidence of prior crimes, nor was it admitted to show Cherry's bad character or propensity to commit a crime.  The Magistrate Judge noted that counsel cannot be ineffective for failing to pursue meritless objections.

Cherry presents no cognizable objection to this portion of the Magistrate Judge's Report and Recommendation.  Consequently, we adopt the Magistrate Judge's recommendation that this claim does not warrant habeas relief.

### 3.    Ineffective assistance of counsel on direct appeal

The Magistrate Judge found that Cherry's claim for ineffective assistance of counsel on direct appeal due to counsel's failure to challenge the legality of the show-up identification has been sufficiently exhausted.  Thus, the Magistrate Judge reviewed this claim on the merits.  The Magistrate Judge found that Cherry was not entitled to habeas relief based on his claim of ineffective assistance of appellate counsel because the Superior Court had found that there was no error in the trial court's denial of Cherry's pre-trial motion to suppress the show-up identifications.  The Magistrate Judge also noted that he found the Superior Court's conclusion regarding the merits of the challenge to the show-up identification to be a reasonable application of federal law.  Therefore, the Magistrate Judge concluded that Cherry's claim that appellate counsel was ineffective fails

because there is no ineffective assistance of counsel for failing to raise a meritless argument.

Cherry does not present any cognizable objections to this portion of the Magistrate Judge's Report and Recommendation. Consequently, we adopt the Magistrate Judge's recommendation that this claim does not warrant habeas relief.

### 4. Ineffectiveness of PCRA counsel

Cherry complains that his PCRA counsel was ineffective. The Magistrate Judge concluded that this presents no deprivation of a constitutional right because there is no Sixth Amendment right to counsel in collateral proceedings. Cherry does not present any objections to this portion of the Magistrate Judge's report and recommendation. Consequently, we adopt the Magistrate Judge's recommendation that this claim does not warrant habeas relief.

### H. Issues Raised in Petitioner's Motion for Clarification

Cherry filed an additional "Motion to Clarify the Facts of the Records" on January 3, 2007. (Doc. No. 32). A habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. Rule 15 of the Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The Supreme Court has held that "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). Thus, any issues raised in Cherry's "Motion to Clarify" that concern matters that do not share a common "core of operative facts" with the claims that were timely raised in the

petition he submitted on July 11, 2005, are untimely.

The bulk of Cherry's "Motion to Clarify" entails additional factual assertions that relate to the claims he has raised in his habeas petition and that are addressed herein.  To the extent that the motion adds factual contentions in support of his previously raised claims, we grant Cherry's Motion to Clarify.  Cherry's motion also appears to assert a claim that his Fourth Amendment rights were violated when the police entered his property without a search warrant and not in hot pursuit of a suspect.  (Doc. No. 32 at 2.)  This allegation appears to assert a new claim not previously raised in his habeas petition and is thus untimely.  We note that even if this new allegation is not untimely, this claim has been procedurally defaulted as it was not raised in Cherry's direct appeal or his PCRA review, and there is no evidence in the record to excuse Cherry's default of this claim.  Thus, to the extent that the "Motion to Clarify" asserts a new claim that Cherry's rights were violated by the police entering his property without a search warrant, the motion is denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD CHERRY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JAMES T. WYNDER**,** JR., et al. | : | NO. 05-2560 |

<u>ORDER</u>

**AND NOW**, this 26th day of March 2007, upon careful and independent consideration of the Petition for Writ of Habeas Corpus (Doc. No. 1), Petitioner's Memorandum of Law in support thereof, Petitioner's "Motion to Clarify the Facts of the Records" (Doc. No. 32), after review of the Report and Recommendation of United States Magistrate Judge David R. Strawbridge, and in consideration of Petitioner's Objections to the Magistrate's Report and Recommendation, **IT IS HEREBY ORDERED** that:

1.   Petitioner's Objections to the Report and Recommendation are **OVERRULED**;

2.   The Report and Recommendation is **APPROVED** and **ADOPTED** to the extent that it is consistent with this opinion;

3.   The Petition for Writ of Habeas Corpus is **DENIED**;

4.   Petitioner's "Motion to Clarify the Facts of the Records" is **GRANTED** in part and **DENIED** in part. It is **GRANTED** to the extent that the motion contains clarifications to Petitioner's claims previously raised in his habeas petition.  It is **DENIED** to the extent that Petitioner attempts to raise a new claim that his constitutional rights were violated by the police entering his property without a search warrant.

5.      As Petitioner has failed to make a substantial showing of the denial of a

        constitutional right, there is no basis for the issuance of a certificate of

        appealability pursuant to 28 U.S.C. § 2253(c)(2); and

6.      The Clerk shall **CLOSE** this case statistically.


                            BY THE COURT:


                            s/ John R. Padova, J.
                            John R. Padova, J.

2